UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PARIS J. SMITH,

        Plaintiff,                   Case No. 1:24-cv-179

v.                                        Honorable Paul L. Maloney

MICHIGAN DEPARTMENT OF
CORRRECTIONS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events of which he complains, however, occurred principally at the E.C. Brooks Correctional

Facility (LRF) in Muskegon, Muskegon County, Michigan.[1] Plaintiff sues the MDOC, MDOC Director Heidi Washington, MDOC Central Facilities Administration Director Jeremy Bush, MDOC Deputy Director Cindy Dodds-Dugan, LRF, and the following LRF personnel: Warden Unknown King; Assistant Deputy Warden Unknown Miller; Unknown Inspector (Unknown Party #1); Grievance Coordinator T. Page; Property Personnel Unknown Crawford; Sergeant Unknown Wakefield; and Corrections Officers Unknown Muskie, Unknown Shea, and Unknown "Green-Tag" Corrections Officer (Unknown Party #2). The individual Defendants are sued in their respective personal and official capacities.

Plaintiff alleges that on the morning of August 24, 2023, Defendants Wakefield and Unknown Green-Tag Corrections Officer packed up his property in connection with a transfer from LRF to MCF. Plaintiff claims they failed to follow MDOC policy when packing up his property. For example, they failed to give Plaintiff a "pack-up slip." (Compl., ECF No. 1, PageID.7.) Plaintiff's property was taken to a holding area. It was removed from the containers and inventoried by Defendant Muskie.

Plaintiff reports that his cellmate Prisoner Braxton took some of Plaintiff's property that had been left behind in the cell to Defendant Muskie. Prisoner Parrom similarly collected some of Plaintiff's left-behind legal property and offered it to Defendant Shea. Shea refused to accept it.

Five days later, Plaintiff received a small portion—less than half—of his property at MCF. Plaintiff did not receive any of his legal materials. Petitioner complained to the MCF Property Manager and one of the MCF counselors. On September 14, 2023, Plaintiff received some of the missing property.

---

[1] MCF and LRF are right next to each other off of Sheridan Drive in Muskegon, Michigan.

2

Plaintiff contends that these Defendants' careless handling of his property resulted in the theft of some of the property by other prisoners, including Prisoners Braxton, Heflin, and Parrom. That contention is supported by a misconduct hearing report attached to Plaintiff's complaint. (Class I Misconduct Hrg. Report, ECF No. 1-4, PageID.40–43.)

Plaintiff claims that Defendants Wakefield, Green-Tag Corrections Officer, Muskie and Shea did not follow the MDOC's policies regarding prisoner property. When Plaintiff filed grievances regarding his loss of property, Defendant King improperly denied the grievance at the second step. Plaintiff claims that "ALL DEFENDANT[]S" except Washington, Bush, and Dodds-Dugan, knew about the failure to follow MDOC policy directives. (Compl., ECF No. 1, PageID.14.) It appears that Plaintiff blames all Defendants for his losses because of their "Failure(s) to establish and/or otherwise maintain that all Policy Directives and Guideline(s), procedure(s), rule(s), etc. . . . are enforced throughout the State of Michigan . . . ." (*Id*.) Plaintiff continues to describe the Defendants' failings using different words, but they all boil down to Defendants either failing to follow policy or failing to make sure that other Defendants followed policy. (*Id*., PageID.15–17.)

Plaintiff seeks compensatory and punitive damages for his lost property. Additionally, he contends that the loss of his legal property has hampered his ability to pursue relief from his illegal incarceration such that he is also entitled to damages for every day he continues to be wrongly incarcerated. Plaintiff does not seek declaratory or injunctive relief.

## II.     Motion to Appoint Counsel

In the complaint, Plaintiff asks the Court to appoint counsel. (Compl., ECF No. 1, PageID.20.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to

3

serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

4

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants have wrongfully deprived him of his property. The Court liberally construes these allegations as an attempt to state a Fourteenth Amendment claim for deprivation of property without due process. Additionally, Plaintiff alleges that the property taken from Plaintiff included legal papers. Plaintiff alleges that by denying him these papers, Defendants have interfered with Plaintiff's access to the courts. These claims are addressed below.

### A. Defendants MDOC and LRF, and Official Capacity Claims Against the Individual Defendants

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has

5

not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

Plaintiff has sued the individual Defendants in their official and personal capacities. Although an action against a defendant in his or her personal capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Because the State of Michigan and its departments are immune under the Eleventh Amendment from suit in the federal courts, Plaintiff's claims for damages against the individual Defendants in their respective official capacities are also barred by sovereign immunity.

Additionally, Plaintiff's claim against LRF also fails. LRF is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public

6

entity for suit" *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . . [; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, as noted above, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Because LRF is not an entity separate from the MDOC—and the MDOC is not a person under the statute—LRF is also not a "person" under §1983. *See, e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same). Therefore, the Court will dismiss Plaintiff's claims against Defendant LRF.

B. **Defendants Washington, Bush, Dodds-Dugan, King, Miller, Unknown Party #1, Page, and Crawford**

Plaintiff makes specific allegations relating to his property against Defendants Muskie, Wakefield, Shea, and Unknown Party #2. With regard to Defendants Washington, Bush, Dodds-Dugan, King, Miller, Unknown Party #1, Page, and Crawford (collectively "the Supervisory Defendants"), however, the crux of Plaintiff's complaint is that they were the superiors of Defendants Muskie, Wakefield, Shea, and Unknown Party #2 yet failed to stop those Defendants

7

from violating policy directives and depriving Plaintiff of his property. Plaintiff's allegations are conclusory; Plaintiff fails to allege any facts showing how the Supervisory Defendants were personally involved in the alleged violations of his constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Instead, Plaintiff seeks to hold the Supervisory Defendants liable due to their supervisory positions. However, government officials, such as the Supervisory Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have

8

> interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that the Supervisory Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff alleges in a conclusory manner that the Supervisory Defendants failed to adequately train and supervise their subordinates (*see* Compl., ECF No. 1, PageID.14–16); however, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

Therefore, for the reasons set forth above, Plaintiff's claims against the Supervisory Defendants will be dismissed.

### C.    Defendants Muskie, Wakefield, Shea, and Unknown Party #2

#### 1.    Failure to Follow Policy Directives

In identifying the misconduct of Defendants Muskie, Wakefield, Shea, and Unknown Party #2, Plaintiff focuses on their failure to follow the MDOC's policy directives. To the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

9

To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); Laney, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

### 2. Deprivation of Property Without Due Process of Law

Plaintiff had a property interest in the personal property that was in his cell at LRF. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. A due process claim for deprivation of Plaintiff's property interests, however, would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided

10

could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544.

Where the state provides such a post-deprivation remedy, the plaintiff must plead and prove the inadequacy of the remedy. *See Copeland*, 57 F.3d at 479 (explaining that "a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong"). Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him.

Michigan law authorizes actions in the Court of Claims asserting "any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers . . . ." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of liberty or property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations he suffered, either negligent or intentional, of his property. Accordingly, Plaintiff's allegations that he was deprived of his property interests without due process of law fails to state a claim upon which relief may be granted.

### 3. Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)

12

(citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415. Plaintiff identifies two separate lawsuits that were impacted by the loss of his legal property: "1 Civil Case involving a previous attorney [and] 1 Criminal Case involving the Defense of my current Criminal Conviction(s)." (Compl., ECF No. 1, PageID.18.)

Plaintiff provides more detail regarding his civil case in the grievance materials attached to his complaint. He describes the action as a "legal malpractice civil suit against my criminal trial attorney." (ECF No. 1-2, PageID.27.) Impairment of that litigating capacity, however, is one of the permissible and incidental consequences of conviction and incarceration. Put differently, interference with Plaintiff's access to the courts to pursue that type of lawsuit is not a violation of the First Amendment.

Plaintiff's access to the courts to continue to challenge his criminal conviction, on the other hand, is protected by the First Amendment. Nonetheless, with regard to that claim, Plaintiff has failed to identify "the lost remedy." *Christopher*, 536 U.S. at 415. Plaintiff appears to acknowledge that he is still pursuing his collateral challenges. The loss he has suffered is not an inability to pursue relief. Plaintiff fails to allege any facts showing that the loss of his paperwork and other materials resulted in any lost remedy in the underlying action. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004))).

D.    **State Law Claims**

Plaintiff's allegations, liberally construed, might be an attempt to state a common-law negligence claim or some other state-law claim relating to violation of the MDOC's policy

directives. As noted above, such state-law violations are not sufficient to support a claim under § 1983. Nonetheless, it is possible that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim. The Court declines to exercise supplemental jurisdiction over such state law claims.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims without prejudice because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   September 26, 2024                           /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge

15